[621 NYS2d 158]

Sᴛᴀᴛᴇ ᴏꜰ Nᴇᴡ Yᴏʀᴋ, Respondent-Appellant, v Wᴀʟ-Mᴀʀᴛ Sᴛᴏʀᴇs, Iɴᴄ., Appellant-Respondent.

Third Department, January 5, 1995

## APPEARANCES OF COUNSEL

*Roberts & Finger,* New York City *(Joel L. Finger, Carter K. Combe* and *Jordan D. Schiffman* of counsel), for appellant-respondent.

*Dennis C. Vacco, Attorney-General,* New York City *(James M. Williams, Jane Lauer Barker, Peter G. Crary* and *M. Patricia Smith* of counsel), for respondent-appellant.

## OPINION OF THE COURT

MERCURE, J.

In February 1993, defendant discharged two of its employees for violating its "fraternization" policy, which is codified in defendant's 1989 Associates Handbook and prohibits a "dating relationship" between a married employee and another employee, other than his or her own spouse. In this action, plaintiff seeks reinstatement of the two employees with back pay upon the ground that their discharge violated Labor Law § 201-d (2) (c), which forbids employer discrimination against employees because of their participation in "legal recreational activities" pursued outside of work hours. Defendant moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint. Supreme Court denied the motion with regard to the first cause of action, concluding that "dating" while one is married "may well be 'recreational activities' within the meaning of [Labor Law § 201-d (2) (c)]", but granted the motion with regard to the second cause of action, predicated upon Executive Law § 63 (12), which prohibits repeated or persistent illegality in the transaction of business.* The parties cross-appeal.

We are not at all persuaded by Supreme Court's effort to force "a dating relationship" within the definition of "recreational activities" (Labor Law § 201-d [1] [b]) and accordingly reverse so much of its order as denied the motion to dismiss the first cause of action. Labor Law § 201-d (1) (b) defines "recreational activities" as meaning: "any lawful, leisure-time activity, for which the employee receives no compensation and which is generally engaged in for recreational purposes, including but not limited to sports, games, hobbies, exercise, reading and the viewing of television, movies and similar material". In our view, there is no justification for proceeding beyond the fundamental rule of construction that "[w]here

---

* The third and fourth causes of action are not at issue on this appeal.

words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation" (McKinney's Cons Laws of NY, Book 1, Statutes § 76, at 168; *see, Matter of Alonzo M. v New York City Dept. of Probation,* 72 NY2d 662, 665; *Clemens v Nealon,* 202 AD2d 747, 749). To us, "dating" is entirely distinct from and, in fact, bears little resemblance to "recreational activity". Whether characterized as a relationship or an activity, an indispensable element of "dating", in fact its raison d'être, is romance, either pursued or realized. For that reason, although a dating couple may go bowling and under the circumstances call that activity a "date", when two individuals lacking amorous interest in one another go bowling or engage in any other kind of "legal recreational activity", they are not "dating".

Moreover, even if Labor Law § 201-d (1) (b) was found to contain some ambiguity, application of the rules of statutory construction does not support Supreme Court's interpretation. We agree with defendant that, to the extent relevant, the voluminous legislative history to the enactment, including memoranda issued in connection with the veto of two earlier more expansive bills *(see, Ulster Elec. Supply Co. v Maryland Cas. Co.,* 35 AD2d 309, 311, *affd* 30 NY2d 712), evinces an obvious intent to limit the statutory protection to certain clearly defined categories of leisure-time activities. Further, in view of the specific inclusion of "sports, games, hobbies, exercise, reading and the viewing of television, movies and similar material" within the statutory definition of "recreational activities" (Labor Law § 201-d [1] [b]), application of the doctrine of *noscitur a sociis* compels the conclusion that personal relationships fall outside the scope of legislative intent *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 239).

Nor is there any realistic danger that this construction will permit employers to infringe upon the right of employees to engage in protected off-hours pursuits by wrongly characterizing dispassionate recreational activity as dating. To the contrary, recognition of the distinction between "dating" and "recreational activity" imposes upon the employer the enhanced burden of establishing not only joint activity of a recreational nature, but the employees' mutual romantic interest as well. Similarly, this construction in no way diminishes the statutory protection afforded social relationships between unmarried employees or married employees having no romantic interest or involvement with one another.

We need not address the cross appeal, as it is predicated upon the viability of plaintiff's first cause of action.

YESAWICH JR., J. (dissenting). I respectfully dissent, for I find defendant's central thesis, apparently accepted by the majority, that the employment policy at issue only prohibits romantic entanglements and not other types of social interaction, to be wholly without merit. While the majority encumbers the word "dating" with an "amorous interest" component, there is nothing in defendant's fraternization policy, its application—defendant does not allege that its two former employees manifested an intimate or amatory attitude toward each other—or even in defendant's own definition of a "date", "a social engagement between persons of opposite sex" (Webster's Ninth New Collegiate Dictionary 325 [1988]), that leads to such a conclusion.

More importantly, I do not agree that "dating", whether or not it involves romantic attachment, falls outside the general definition of "recreational activities" found in Labor Law § 201-d (1) (b). The statute, by its terms, appears to encompass social activities, whether or not they have a romantic element, for it includes *any* lawful activity pursued for recreational purposes and undertaken during leisure time (Labor Law § 201-d [1] [b]). Though no explicit definition of "recreational purposes" is contained in the statute, "recreation" is, in the words of one dictionary, "a means of refreshment or diversion" (Webster's Ninth New Collegiate Dictionary 985 [1985]); social interaction surely qualifies as a "diversion".

Moreover, while the majority assures that the construction it adopts "in no way diminishes the statutory protection afforded social relationships between unmarried employees", I am less sanguine, because the majority's holding implies that the statute affords no protection to any social relationship that might contain a romantic aspect, regardless of the marital status of the participants, or the impact that the relationship has on their capacity to perform their jobs.

In my view, given the fact that the Legislature's primary intent in enacting Labor Law § 201-d was to curtail employers' ability to discriminate on the basis of activities that are pursued outside of work hours, and that have no bearing on one's ability to perform one's job, and concomitantly to guarantee employees a certain degree of freedom to conduct their lives as they please during nonworking hours, the narrow interpretation adopted by the majority is indefensible. Rather,

the statute, and the term "recreational activities" in particular, should be construed as broadly as the definitional language allows, to effect its remedial purpose *(see, Matter of Hartnett v Village of Ballston Spa,* 152 AD2d 83, 86, *appeal dismissed* 75 NY2d 863, *lv denied* 75 NY2d 711).

And while it is true that, as a general rule of statutory construction, the breadth of an inclusory phrase is to be considered limited by the specific examples accompanying it, this principle must yield where necessary to carry out the underlying purpose of the enactment. Additionally, it is only applicable when the examples fall into a single, well-defined class, and are not themselves general in nature. Here, the list, which includes vast categories such as "hobbies" and "sports", as well as very different types of activities (e.g., exercise, reading), appears to have been compiled with an eye toward extending the reach of the statute. This, coupled with the explicit directive that the definition is *not* to be limited to the examples given, provides further indication that the term "recreational activities" should be construed expansively. Accordingly, I would affirm Supreme Court's denial of defendant's motion to dismiss the first cause of action.

That being the case, I would also reinstate the second cause of action, for the mere fact that a claim has been asserted under one statute or legal theory does not bar a plaintiff from pursuing an alternate theory of recovery in the same action *(see, Berkeley v Park,* 47 Misc 2d 381, 384), and I am unpersuaded by defendant's suggestion that Executive Law § 63 (12) may only be invoked in the area of "consumer protection" *(see, e.g., People v Hamilton,* 125 AD2d 1000, 1001). Hence, if defendant's termination of the two employees is found to have been contrary to the Labor Law, this conduct could, inasmuch as it affected more than one person, constitute "repeated" illegality as that term is defined in Executive Law § 63 (12).

MIKOLL, J. P., and PETERS, J., concur with MERCURE, J.; YESAWICH JR., J., dissents in a separate opinion.

Ordered that the order is modified, on the law, with costs to defendant, by reversing so much thereof as denied defendant's motion with regard to the first cause of action; motion granted with regard to the first cause of action and said cause of action dismissed; and, as so modified, affirmed.